UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN,
MILWAUKEE DIVISION

Robert Moy,

    Plaintiff,

v().    Case No.

City of Milwaukee, and
Jeffrey Norman.

    Defendants.

# COMPLAINT

Plaintiff Robert Moy ("Moy"), by his undersigned counsel, Ben Hitchcock Cross of Cross Law Firm, S.C., and for his Complaint, states and alleges as follows:

## NATURE OF CASE

1. Plaintiff Robert Moy ("Moy") brings this action pursuant to 42 U.S.C. § 1983 and to the Fifth and Fourteenth Amendments to the United States Constitution.

2. Plaintiff had a protected interest in continued employment with Defendant the City of Milwaukee (specifically, with the Milwaukee Police Department ("MPD")) pursuant to local understandings and regulations regarding City employees.

3. Plaintiff is alleged to have engaged in misconduct constituting grounds for discipline. Specifically, it was alleged that Plaintiff perpetrated a hit-and-run in the parking lot of a strip club. Defendants substituted moral judgement for constitutional process, even the limited process due to a probationary employee.

4. Based on these allegations and a subsequent investigation into them—an

1

investigation which did not comport with constitutional guarantees of due process—Plaintiff was deprived by Defendant of his protected interest without due process in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution, i.e., did not receive the requisite notice and opportunity to be heard before he was so deprived.

5. Plaintiff now brings this action pursuant to 42 U.S.C. § 1983 to vindicate his rights.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims present questions of law under the federal Constitution.

7. Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and because a substantial part of the unlawful action Defendants took against Plaintiff took place in this District.

8. To the extent that Plaintiff's federal claim implicates any claims or legal questions under Wisconsin (i.e., State) law, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367 because they arise out of the same nucleus of operative fact as does the federal claim.

## PARTIES

9. Plaintiff Robert Moy ("Plaintiff") is a resident of the Eastern District of Wisconsin and a citizen of the United States of America.

10. Defendant City of Milwaukee (the "City") is a First-Class City situated in the Eastern District of Wisconsin; it provides police services through its Police Department ("MPD").

11. Defendant Jeffrey Norman ("Norman") was, at all times relevant to this

action, the Chief of the MPD. He is a resident of the Eastern District of Wisconsin and is named in this Complaint as a Defendant in his individual capacity.

## FACTS

12. At all times relevant to this action, Plaintiff was a probationary employee of Defendant the City at the MPD.

13. Plaintiff began training to become a police officer for MPD on or around April 20, 2022.

14. Plaintiff graduated from the police academy in or around late October 2022 and began working as a probationary police officer in City District 1.

15. Had Plaintiff completed his 16-month probationary period, he would have become a full MPD officer in August 2023.

16. Even as a probationary employee, Plaintiff had a protected property interest in continued employment with Defendant the City at MPD and was entitled, according to local understandings and regulations, to receive certain due-process protections before being terminated.

17. Probationary employees are uniquely subject to termination as a form of discipline. MPD Standard Operating Procedure ("SOP") 870.10(B)(6).

18. However, "any suspension or discipline administered to an employee" pursuant to MPD SOP 870.10 still must "compl[y] with all standard operating procedures, the [MPD] Code of Conduct and Wisconsin state statutes," MPD SOP 870.05, and "all formal discipline shall be rendered by the Chief of Police." MPD SOP 870.10(B), Note.

19. The administration of formal disciplinary charges to any and all MPD

3

employees, or "department members," is governed by MPD SOP 870.20; that regulation makes no exception for probationary employees like Plaintiff.

20. Under MPD SOP 870.20(C)(1), when "formal disciplinary charges are preferred," i.e., raised, "against a department member," that department member is entitled to receive personally a "notification letter ... along with a copy of the formal disciplinary charges and a copy of the investigating supervisor's summary of the investigation" into the conduct precipitating the charges. This is how the MPD SOP provide for notice to MPD employees at risk of termination, i.e., at risk of being deprived of their protected interest in continued employment by MPD.

21. This notification letter also serves to provide "an opportunity for the accused department member to file a *Department Memorandum* (form PM-9E) to the Chief of Police explaining the member's conduct." MPD SOP 870.20(C)(2).

22. In preparing this *Department Memorandum* (form PM-9E), a department member "may include a statement of the accused member's side of the story, including any mitigating factors or circumstances, and the name, address, telephone number, and nature of information possessed by any additional witnesses whom the member wishes department investigators to interview." MPD SOP 870.20(D)(2).

23. The Chief of Police, then, is to "consider the accused member's *Department Memorandum* (form PM-9E) before making any decision regarding guilt or innocence or imposition of discipline." MPD SOP 870.20(D)(3).

24. This is how the MPD SOP provide for an opportunity to be heard, i.e., an opportunity for the accused MPD employee to tell their side of the story as to the conduct precipitating the charges being raised against them.

25. Defendant the City, through MPD, granted probationary employees the protections detailed above.

26. During his tenure with Defendant the City at MPD, Plaintiff was alleged to have engaged in misconduct which would have made him subject to employer discipline if the allegations were proven to be true.

27. On Tuesday, December 6, 2022, Plaintiff went with a friend to On the Border, a self-described gentleman's club in Franklin, Wisconsin, arriving there at about 11:45 p.m.

28. Neither Plaintiff nor his friend consumed alcohol while at this club.

29. The two of them left the bar around 2:00 a.m. on what was then Wednesday, December 7, 2022; Plaintiff dropped off his friend at home.

30. Around 2:30 a.m., Plaintiff received a call from an unknown number; upon listening to a voicemail, he discovered the caller was Officer Bradley Treiber with the Franklin Police Department, who said that he was investigating a hit and run.

31. Plaintiff called Officer Treiber back at around 2:35 a.m. Officer Treiber asked Plaintiff if Plaintiff had been involved in a hit and run in the On the Border parking lot, and Plaintiff said no, he was not aware of having hit a car or being otherwise involved in the incident.

32. Officer Treiber asked if he could come to Plaintiff's house and inspect the car he had been driving, and Plaintiff consented, having just gotten home himself.

33. At around 2:55 a.m., Officer Treiber arrived at Plaintiff's home and inspected the car in Plaintiff's garage; Officer Treiber did notice a mark on the car, but Plaintiff informed him that the car was a 2012 model and so had seen some wear and

5

tear.

34. Officer Treiber then told Plaintiff the facts of the complaint as he understood them: the accuser apparently told the Officer that another car backed in, hit the accuser's Jeep, and drove off.

35. Officer Treiber asked who was driving the car when the incident occurred; Plaintiff replied, "Nobody was, because I wasn't involved in the accident."

36. At around 3:30 a.m., after learning that Plaintiff was a Milwaukee police officer, Officer Treiber left the scene without issuing a citation, a ticket, or even a warning.

37. Around midnight on Thursday, December 8, 2022, Plaintiff reported to work in City District 1 for his next shift, having not worked Wednesday.

38. At 7:30 a.m. Thursday morning, Plaintiff was called down to the police academy to speak with Internal Affairs; another officer drove Plaintiff to the academy, not allowing him to make his way there himself, and Plaintiff began meeting with two IA officers around 8:00 a.m.

39. The two officers told Plaintiff they would be recording the conversation, admonished him to remain truthful, and began interviewing Plaintiff as to his alleged involvement in the hit and run.

40. Plaintiff walked them through the course of events on Tuesday night and Wednesday morning, including by pointing out, on an aerial map of the On the Border that the investigators provided to him, where his car had been parked that night and the way he drove out of the parking lot to leave the club.

41. At the end of the meeting, the investigators informed Plaintiff that he

6

would be placed on administrative leave and stripped of all police powers; the officer who drove Plaintiff to the academy then drove him back to District 1, took him downstairs, and told him to clean out his locker.

42. Later that day, around 2:00 p.m., MPD Sergeant Ray called Plaintiff and told him he would soon be arriving at Plaintiff's house with some paperwork; when the Sergeant arrived, he gave Plaintiff an orange letter folder and a written statement.

43. That statement, dated December 8, 2022, and signed by Defendant Norman as then-Chief of MPD, read as follows:

> "Probationary Police Officer Robert M. Moy (035696) assigned to District One is hereby terminated effective immediately, pursuant to Core Value 1.00—competence; Guiding Principle 1.01, consistent with Fire and Police Commission Rule XI, Section 7."

44. The Sergeant also informed Plaintiff that as a probationary employee, Plaintiff had no right of appeal to the Fire and Police Commission.

45. MPD, as an arm of Defendant the City and with the full endorsement of Defendant Norman, terminated Plaintiff without affording him due process, i.e., notice and an opportunity to be heard.

46. On information and belief, the City has a practice of terminating other probationary employees without reference to MPD SOP 870.20(C)(1).

47. On information and belief Norman made the decision to terminate Plaintiff without notice or opportunity to be heard or other reference to MPD SOP 870.20(C)(1).

48. At all times relevant to this action, Plaintiff was a probationary employee and "department member" in whom the MPD SOP created a property interest in continued employment.

49. Under the MPD SOP, Plaintiff could not be lawfully deprived of this

interest without due process of law, i.e., without notice sufficient to permit him to prepare a defense and without an opportunity to be heard at a meaningful time and in a meaningful manner, i.e., before termination.

50. At no point during this process was Plaintiff given the requisite notification letter, copy of the formal disciplinary charges, or summary of the investigators' findings to which he was entitled under the MPD SOP.

51. Plaintiff was thereby denied notice sufficient to prepare a defense and denied an opportunity to be heard at a meaningful time and in a meaningful manner, i.e., before termination; indeed, Plaintiff was asked to clean out his locker before he even knew he was being terminated.

52. It is the policy, practice, or custom of MPD, as an arm of Defendant the City and as endorsed by Defendant Norman, then-MPD Chief, to terminate probationary employees without affording them due process.

53. The policy, custom, or practice of Defendants MPD and the City in terminating probationary employees like Plaintiff was at that time and remains now to effect terminations without affording the due process to which the employees being terminated are entitled.

54. So, too, is it the policy, practice, or custom of Defendants MPD and the City to circumvent the requirement in the MPD SOP that all formal discipline be rendered by the Chief of Police by effecting summary terminations of probationary employees, even though such employees, by the terms of the MPD SOP, have the same due-process rights as full employees.

55. It is the policy, practice, or custom of Defendants MPD and the City to

8

deny probationary employees at risk of termination the notice—the notification letter, copy of charges, and investigator summary—to which they are entitled under the MPD SOP.

56. It is the policy, practice, or custom of Defendants MPD and the City to interview employees at risk of employer discipline without giving them proper notice that such is the only (plainly insufficient) opportunity to be heard that they will receive before termination, and otherwise to deny outright to employees any meaningful opportunity to be heard.

57. Defendant Norman had actual knowledge of his obligation to oversee all formal discipline and yet endorsed without reservation the formal discipline imposed upon Plaintiff; that is, it was not only the policy, practice, or custom of Defendants MPD and the City, but also of the City's executives, to deny probationary employees due process.

## **CLAIM FOR RELIEF**

**1. Violations of 42 U.S.C. § 1983 and of U.S. Const. amends. V & XIV**

**Against Defendants the City and Jeffrey Norman**

58. Plaintiff incorporates by reference all preceding paragraphs as if such were restated herein.

59. As a probationary MPD officer, Plaintiff was a public employee of Defendants MPD and the City.

60. Pursuant to local regulations and understandings, namely the MPD SOP, Plaintiff had a protected property interest in continued employment with Defendants MPD and the City—an interest of which Plaintiff could not be deprived without due

9

process of law—i.e., without the notice and the opportunity to be heard which are demanded by the federal Constitution.

61. It was and remains now the policy, practice, or custom of Defendants MPD and the City, as endorsed with full knowledge by Defendant Norman, to deny probationary employees the process due to them under the MPD SOP and the federal Constitution.

62. Defendants implemented this policy, practice, or custom in Plaintiff's specific case, denying him due process as a matter of official policy, practice, or custom.

63. By reason of Defendants' actions, Plaintiff has suffered substantial actual damages.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff Robert Moy respectfully requests that this Court enter judgment in his favor and against Defendants, including by ordering:

64. that Defendants make Plaintiff whole by providing:

65. back pay with prejudgment interest;

66. compensation for past and future pecuniary losses;

67. compensation for noneconomic (e.g., emotional) damages;

68. punitive damages; and

69. attorneys fees and costs resulting from this lawsuit;

70. that Defendants reinstate Plaintiff as a full MPD officer or, in the alternative, to award Plaintiff front pay;

71. that injunctive relief be granted against Defendants to prevent further due-

process violations; and

72. that Plaintiff be awarded any other additional relief such as this Court deems just and proper.

PLAINTIFF REQUESTS THAT THE ABOVE-CAPTIONED MATTER BE TRIED TO A 12-PERSON JURY.

Dated this 4th day of December 2025.

**CROSS LAW FIRM, S.C.**
Attorneys for Plaintiff Robert Moy
By: /s/ Ben Hitchcock Cross
Ben Hitchcock Cross
State Bar No. 1066395
bchc@crosslawfirm.com
Cross Law Firm, S.C.
Lawyer's Building
845 N. 11th St.
Milwaukee, WI 53233
Phone: (414) 224-0000
Fax: (414) 273-7055